IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMBER BROWN, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 20-CV-481-RAW |
| | ) |
| SOLARA HOSPITAL MUSKOGEE, | ) |
| d/b/a CORNERSTONE HOSPITAL OF | ) |
| OKLAHOMA – MUSKOGEE, | ) |
| | ) |
|    Defendant. | ) |

**COMPLAINT**
**(JURY TRIAL DEMANDED)**

Plaintiff, Amber Brown, through her attorney of record, Melvin C. Hall of Riggs, Abney, Neal, Turpen, Orbison & Lewis, files this Complaint against Defendant, Solara Hospital Muskogee d/b/a Cornerstone Hospital of Oklahoma - Muskogee. In support of her Complaint, Plaintiff states as follows:

**PRELIMINARY STATEMENT**

1. This action arises under the provisions of Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1866, 42 U.S.C. § 1981, to address the deprivation of her rights from discriminatory and retaliatory employment practices by Solara Hospital Muskogee d/b/a Cornerstone Hospital of Oklahoma - Muskogee

**JURISDICTION AND VENUE**

2. The court has jurisdiction over this Complaint in that the matters in controversy arise under the laws of the United States, 28 U.S.C. §§ 1331 and 1343(a).

3. Venue is proper in this court pursuant to 28 U.S.C. § 1391.

**PARTIES**

4. Plaintiff, Amber Brown (Ms. Brown) is an African American citizen of the United States, a resident of the City of Muskogee, Muskogee County, Oklahoma, and this judicial district. Plaintiff was employed with Defendant for a total of four years, from March 22, 2016 to May 13, 2020, in the position of Registered Nurse.

5. Defendant, Solara Hospital Muskogee d/b/a Cornerstone Hospital of Oklahoma – Muskogee (Cornerstone) is an Oklahoma corporation doing business in Muskogee, Muskogee County, Oklahoma, and this judicial district.

**INTRODUCTION**

6. This action arises under the provisions of Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1866, 42 U.S.C. § 1981. Ms. Brown is seeking declaratory relief, injunctive relief, damages, including actual damages, compensatory damages, and punitive damages, to address the deprivation of her rights from discriminatory and retaliatory employment practices on the basis of her race and protected activity by Cornerstone.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

7. Ms. Brown's Charge of Discrimination was timely filed with the Equal Employment Opportunity Commission on August 24, 2020.

8. The EEOC assigned Ms. Green's Charge of Discrimination with Charge Number 564-2020-01328.

9. On September 24, 2020, the EEOC issued a Notice of Right to Sue for this charge.

10. This lawsuit is filed within 90 days of receipt of Ms. Brown's Notice of Right to Sue.

11. Ms. Brown has exhausted all administrative remedies under federal law.

**STATEMENT OF THE CASE**

12.     Ms. Brown began her employment with Cornerstone on March 22, 2016, as a registered nurse.

13.     Throughout Ms. Brown's employment with Cornerstone she successfully performed her job duties.

14.     In 2017 the Administration changed at Cornerstone. Elizabeth Waytula became the Chief Executive Officer, and Jodie Green became the Chief Nursing Officer.

15.     Not long into this Administration, racism and discrimination started becoming more and more overt.

16.     The acts of racism and discrimination against Ms. Brown and other African American co-workers were repeatedly reported by Ms. Brown to HR at the facility, to Jodie Green, and to Elizabeth Waytula. Ms. Brown received no response.

17.     As racial tension was building in the facility, Jodie Green called Ms. Brown, and other African American co-workers, into her office on separate occasions to discuss these matters.

18.     Ms. Brown reported specific incidents that had occurred to Jodie Green, who advised that she would conduct an investigation into the matters.

19.     Jodie Green subsequently reported that her investigation revealed that black staff members, and those who identified with anything culturally or ethnically other than Jodie Green's race (white), deserved whatever treatment they received because they talk with their hands and heads and are "sassy."

20.     Ms. Brown construed Jodie Green's comments and observations as insulting, belittling, and racially derogatory to the female African American employees.

21.     Ensuing, Ms. Brown was subjected to racial and sexual harassment, as well as sexual propositioning from her supervisor, Charge Nurse, Kyle Pingleton, which included him

making sexually explicit comments about Ms. Brown's body, in particular her buttocks, skin tone, and hair. Kyle Pingleton frequently told Ms. Brown and others that he wanted Ms. Brown to have his baby. On each occasion, Ms. Brown told Kyle Pingleton that his observations and comments were not welcome, but he continued to make them.

22. On April 8, 2020, Ms. Brown met with Jodie Green to complain again about discrimination.

23. On April 13, 2020, Ms. Brown had a cell phone conversation with Jodie Green to complain again about discrimination.

24. On April 14, 2020, Ms. Green had a cell phone conversation with Corporate Director of Clinical Operations, Denise Benningfield-Crelia, to complain about discrimination, racism, and negligence. Denise Benningfield-Crelia referred Ms. Brown to HR Manager, Terry Incombe, who was supposed to call Ms. Brown, but never did.

25. In late April 2020, an African American Housekeeper, Arie Johnson, reported that a patient in Room 24 told her, "I sho need some of that nigger pussy." Ms. Johnson reported the incident to Charge Nurse, Pam Troliver, who responded "Why don't you go give him some?"

26. The next day, Arie Johnson reported to Ms. Brown what the patient had said to her and how Pam Toliver responded when she reported the incident to her.

27. Ms. Brown then reported the matter to Jodie Green, and inquired what she was going to do about the situation that had occurred with Arie Johnson.

28. Ms. Brown's repeated complaints of racism and discrimination prompted Jodie Green to advise her that Corporate Human Resources Manager, Terry Lacombe, would contact her to discuss all of her issues and concerns.

29. Terry Lacombe never contacted Ms. Brown. However, on April 30, 2020, Denise Benningfield-Crelia sent Ms. Brown an email advising that Terry Lacombe had called Ms. Brown

and left a message. Ms. Brown immediately responded to Ms. Crelia's email advising that there was no message left.

30. In early May 2020, Cornerstone posted a notice stating:

**HOSPITAL CULTURE CHECK**
**Tuesday May 13th 0830-2200**
**Wednesday May 14th 0900-2200**
**ATTENTION ALL STAFF: THIS INTERVIEW IS MANDATORY**

31. The notice went on to state that Corporate Human Resources Manager, Terry Lacombe would be at the facility to offer the employees an opportunity to voice any issues or concerns they might have in regards to the workplace. The employees were also encouraged to use the signup sheet to choose an appointment time to speak with Terry Lacombe.

32. On May 6, 2020, Ms. Brown participated in yet another telephone conference with Cornerstone's CEO, Elizabeth Waytula; Chief Nursing Officer, Jodie Green; and Patient Care Technician, Stacie Derrick. During the conference Ms. Brown reported the acts of racism occurring in the hospital. In particular, Ms. Brown informed them of the complaint reported by Arie Johnson, wherein a patient said to her, "I sho need some of that nigger pussy." And Pam Toliver's response to Arie Johnson was, "Why don't you go give him some?"

33. Kyle Pingleton, Charge Nurse and Ms. Brown's supervisor, fearing that Ms. Brown would report the racist and sexual observations and comments he had made to Ms. Brown, unilaterally scheduled Ms. Brown to meet with Terry Lacombe at 19:30 on May 13, 2020. Kyle Pingleton advised Ms. Brown accordingly.

34. When Ms. Brown arrived for her meeting with Terry Lacombe, she noticed that Jodie Green and HR Representative, Lanita Arvey, were also present. Ms. Brown immediately knew that she had been falsely set up because pursuant to the Hospital Culture Check notice, "Everything that is said during the one on one session [with Terry Lacombe was to be] strictly confidential."

5

35. It was during this meeting that Ms. Brown was informed by Jodie Green, with Terry Lacombe and Lanita Arvey present, that she was terminated due to an exaggerated and falsified story reported by Kyle Pingleton that occurred on the night shift prior to the meeting.

36. On May 13, 2020, Ms. Brown was given an already prepared termination notice that stated she was terminated because: "On May 12, 2020 Amber initially refused to take a patient assignment. She created a hostile work envirionment [sic] prior to accepting the patient."

37. It was clear to Ms. Brown that Kyle Pingleton unilaterally scheduled Ms. Brown to meet with Terry Lacombe, <u>not</u> so that she could voice any issues or concerns she had regarding the workplace, but instead, to allow Ms. Brown to be terminated in front of Terry Lacombe, Jodie Green and Lanita Arvey.

## COUNT I
## Discrimination Based on Race

38. Ms. Brown incorporates by reference all previous allegations.

39. Ms. Brown, as an African American, is in a protected class.

40. Ms. Brown met the objective qualifications for the position of Registered Nurse.

41. Ms. Brown suffered an adverse employment action with her May 13, 2020, termination.

42. Ms. Brown's position was not eliminated after her termination, in fact, Ms. Brown was replaced by a white female.

43. Cornerstone engaged in intentional and unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1866, 42 U.S.C. § 1981. The discriminatory practices include, but are not limited to, Ms. Brown's termination on May 13, 2020, due to her race, in violation of the above referenced federal statutes.

## COUNT II
### Retaliation

44. Ms. Brown incorporates by reference all previous allegations.

45. Ms. Brown engaged in multiple acts of protected activity.

46. Ms. Brown suffered an adverse employment action with her May 13, 2020, termination.

47. There existed a causal connection between the protected activity and the adverse employment action.

48. Cornerstone engaged in intentional, unlawful, and retaliatory employment practices in violation of Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1866, 42 U.S.C. § 1981. The retaliatory practices include, but are not limited to, terminating Ms. Brown on May 13, 2020, due to her protected opposition to the intentional and unlawful employment practices of Cornerstone.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Amber Brown, seeks to recover against Defendant, Solara Hospital Muskogee d/b/a Cornerstone Hospital of Oklahoma - Muskogee:

1. Actual damages in the form of lost back pay and benefits.

2. Reinstatement, however, in lieu of reinstatement, Ms. Brown seeks front pay and all lost future earnings projected out five years.

5. Compensatory damages for future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

4. Punitive damages for Defendant's willful and reckless disregard and wanton deprivation of Plaintiff's civil rights as protected by Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1866, 42 U.S.C. § 1981.

5.   Reasonable attorney fees and court costs, as well as other relief as the court deems appropriated

                Respectfully submitted,

                RIGGS, ABNEY, NEAL, TURPEN,
                  ORBISON & LEWIS

                s/ Melvin C. Hall
                Melvin C. Hall, OBA No. 3728
                528 NW 12th Street
                Oklahoma City, OK 73103
                Telephone: (405) 843-9909
                Facsimile: (405) 842-2913
                Email: mhall@riggsabney.com

**ATTORNEY'S LIEN CLAIMED**
**JURY TRIAL DEMANDED**